## In re BENGSTON.

## CHICAGO TITLE & TRUST CO. v. KIEFER.

(Circuit Court of Appeals, Seventh Circuit. January 27, 1925.)

Nos. 3492, 3493.

1. Bankruptcy �આ196—Bankrupt's equitable interest in land conveyed to his attorney held subject to judgment lien.

Judgment obtained against bankrupt more than four months before bankruptcy *held* lien, under Hurd's Rev. St. Ill. 1917, c. 77, on land which had been conveyed to bankrupt's attorney, pursuant to agreement, to which judgment creditor did not assent, made at meeting of bankrupt's creditors, providing for surrender of bankrupt's lien claim in other property, in consideration for property so conveyed to attorney and certain amount in cash.

2. Bankruptcy ⊨217(3)—Order on petition to restrain suit in state court held mere restraining order.

Order of bankruptcy court, upholding bankrupt's petition to restrain judgment creditor from prosecuting bill in state court in aid of execution, *held* not conclusive as to whether judgment was lien on real estate, on judgment creditor's prayer for preference, being merely a restraining order.

Petition for Revision of Proceedings of the District Court of the United States for the Eastern Division of the Northern District of Illinois.

In the matter of Harry Bengston, bankrupt. On petition of the Chicago Title & Trust Company, trustee, to review and revise, and appeal from order of District Court in favor of Ben P. Kiefer, claimant of judgment lien on real estate. Affirmed.

Ralph E. Brown, of Chicago, Ill., for appellant.

Millard R. Powers, of Chicago, Ill., for appellee.

Before ALSCHULER, EVANS, and PAGE, Circuit Judges.

PAGE, Circuit Judge. Bankrupt took in payment for a debt real estate in Cook county, Ill., with deed therefor in the name of his attorney, Sayers. In the circuit court of Cook county, more than four months before adjudication in bankruptcy, appellee obtained judgment against bankrupt, and the question here is whether the holding by the District Court, that it was a lien upon that real estate, should be reversed.

Appellant concedes that judgments become liens under the Illinois statute upon all equitable interests in real estate (sections 1 and 3, chap. 77, Cahill's Ill. Revised Stats. 1921, p. 2104; Hurd's Revised Stats. Ill. 1917, p. 1801; Jones & Addington's Ill. Stats. Ann. pars. 6747 and 6749), but urges: (a) That where there is a conveyance by a debtor to a third party, fraudulent as to creditors, a judgment lien does not attach; and (b) that no equitable interest which cannot be enforced by the judgment debtor is subject to the lien of a judgment.

The first proposition is fully sustained by many Illinois authorities. See Jones & Addington's Ill. Stats. Ann. vol. 4, p. 3679; Union Natl. Bank v. Lane, 177 Ill. 171, 52 N. E. 361, 69 Am. St. Rep. 216.

The second proposition is in substance the

·same as the first, because both are based upon what may be called a legal fact in Illinois, namely, that under those circumstances there is nothing remaining in the debtor.

There is no evidence or claim that the conveyance to Sayers was in fraud of creditors. Do the facts show that bankrupt had divested himself of all interest? The referee certified to the court the following facts, viz.:

"It was decided upon a meeting of bankrupt's creditors that it would be advisable to trade the bankrupt's right to claim a lien in the property owned by the third party for the property in question and $4,000 in cash, and that the title to the new property was to be taken in the name of Glenn P. Sayers. Kiefer" (appellee) "took no affirmative action either for or against such procedure. Sayers at that time was the attorney for the bankrupt. The legal title * * * was held by Sayers in his name and he paid off some creditors of the bankrupt. * * * The bankrupt did not have possession at any time. * * *

"Sayers has stated that he has paid Bengston" (bankrupt) "moneys and himself for services as attorney and collected the rents."

The referee then told the court that the basis of his holding, adverse to appellee, was Union National Bank v. Lane, supra. The opinion there expressly states that the decision is based upon the fact that the conveyance there in question had been made "fraudulently to hinder and delay creditors." As there is no evidence here of such a fraudulent intent or purpose, that case is not in point. Who the creditors in the meeting were, whether all the creditors were present, how much the claims of those present were, are things which do not appear. The purpose of placing the title in Sayers was not made the subject of any writing, and the terms of any agreement relating thereto, if such there was, are not disclosed. We must look, for a solution of the question, to the relations between the parties and what they did.

"He" (Sayers) "paid off some creditors," but under what arrangement or by whose order does not appear. From what source he got the money does not appear. "Sayers has stated that he has paid Bengston moneys and himself for services as attorney and collected the rents." Under what authority or agreement he paid Bengston or himself money does not appear, and unless we are warranted in finding that both Sayers and Bengston were paid from rents, the source of the money does not appear. If Bengston was then insolvent, as the referee found, then we must assume that Bengston was being paid from the $4,000, if that went to Sayers, or from the rents, either of which would tend to show that there had been no such absolute disposition of his property as would make a common-law assignment. Wiggins v. Hummel, Rec., 295 F. (7th C. C. A.) 510. Those are all the things done by Sayers before the filing of the bankruptcy petition. Payments to Bengston were inconsistent with the theory that he had no interest in the property. Sayers was acting as attorney for Bengston when he filed his voluntary petition and schedule, wherein the real estate in question was scheduled as bankrupt's property, without any claim that Sayers had any interest in the property or owed any one other than bankrupt any duty. Two days later Sayers, as attorney for bankrupt, filed a petition in the bankruptcy court asking the court to restrain appellant from prosecuting his suit in the state court in aid of execution issued on the judgment in question. The statement on the schedule that "the title of above property in Glenn P. Sayers * * * in trust for the benefit of creditors," if it amounts to anything, is nothing more than an admission that, although the title was held by Sayers, it was in trust for the creditors in bankruptcy.

The acts of bankrupt and Sayers were inconsistent with any theory that bankrupt had no interest in the property. At all times, as the record shows, Sayers was bankrupt's attorney, and there is nothing to show that at any time he represented any one else.

[1] We are of opinion that bankrupt had an interest to which the lien of the judgment attached.

On the petition, supra, to restrain appellee from prosecuting his bill in the state court, in aid of execution, the order of March 10, 1924, was made much broader than the prayer of the petition, and it is claimed that that order, which has not been appealed from, was adverse to and determinative of appellee's rights. Three days thereafter appellee filed his petition, setting up the fact that he had been restrained, and also setting out all the facts pertaining to his judgment and asking the court to decree his judgment to be a prior lien on the real estate or on the proceeds of any sale thereof. Later, a formal proof of claim was filed, which set out the facts and prayed a preference. The trustee (appellant) set up a claim that the order of March 10th was final and adverse to appellee. On May 2, 1924, the referee found that appellee was not entitled to a preference.

[2] In that order he referred to the order of March 10th merely as a restraining order. In the referee's certificates on petition to review, he stated what his holding had been under the order of May 2d, and that he had so decided on authority of Union Natl. Bank v. Lane, supra, making no reference to the order of March 10th. We are of opinion that the referee and the court very properly treated the order of March 10th as merely a restraining order.

The order of the District Court is affirmed.